THOMAS W. COBB, Plaintiff in Error, *vs.* WM. B. STALLINGS, Defendant in Error.

B. A. BALDWIN, Plaintiff in Error, *vs.* JOHN WEST, Defendant in Error.

Assessors and Collectors of the Confederate Tax, duly appointed under revenue laws passed by the Congress of the Confederate States, and actually employed in the duties of their respective offices, are not liable to be called by the Governor of the State of Georgia into active service as militia-men. If the militia laws of Georgia authorize such a call, they are in conflict with the revenue laws of the Confederate States, which are a part of the supreme law of the land, and must prevail over the former.

Decisions on *habeas corpus*, by Judge JOHN T. CLARKE, at Chambers, September, 1864.

In the Supreme Court these two cases were argued together. They concerned the liability to militia service of the Assessors and Collectors of taxes for the Government of the Confederate States.

The plaintiff, Cobb, aged 34 years, was duly appointed, in June 1863, Tax Collector of the Confederate States, for the 24th district of Georgia, comprising the county of Webster ; and since that period, he had been regularly engaged in the duties incident to his appointment. After the passage of the act of Congress, entitled, " An act to organize forces to serve during the war," approved February 17th, 1864, he was enrolled by the proper officer, under that act, and regularly detailed and assigned to the duties of his previous appointment. While engaged in their performance, he was arrested by the defendant Stallings, under an order emanating from His Excellency, the Governor, for the purpose of being placed, as a soldier, in the militia of the State, having prior to the 17th of February 1864, (the date of the act of Congress,) been enrolled in the militia, under an act of the General Assembly, entitled, " An act to reorganize the militia of the State of Georgia, and for other purposes," approved December 14th, 1863. While held in custody by Stallings under the order of the Executive, he applied to Judge Clarke for a writ of *habeas corpus*, which was granted ; and at the hearing, the Judge remanded him, holding him subject to militia duty.

The other plaintiff in error, Baldwin, aged 44 years, was appointed Confederate States Tax Assessor, for Stewart county, in July 1863, and from that date, up to the trial in the Court below, had been in the actual discharge of the duties of his office. He had never been enrolled in the militia of the State, but had been regularly enrolled and mustered into the service of the Confederate States, and on the 16th July 1864, was detailed by the enrolling

10

officer of the 3d Congressional district, for six months, as Confederate States War Tax Collector and Assessor for the county of Stewart. He was arrested by West, under the same authority, and for the same purpose as indicated above in the matter of Cobb, and on *habeas corpus*, at his instance, Judge Clarke rendered a similar judgment.

HALL, for plaintiffs in error.

HARRELL, for defendants.

*By the Court.*—JENKINS, J: delivering the opinion.

The question for consideration in this case, is whether or not Assessors and Collectors of the Confederate tax in the State of Georgia, actually engaged in their respective duties, are subject, under the laws of the State of Georgia, as a portion of the militia thereof, to be called by the Governor into actual service for the purpose of repelling invasion. .

It is very clear that it is the duty of the Confederate Government to protect each and all of the Confederate States against invasion, and that the general conduct and management of the war now in progress, are committed, by the constitution, to that Government. But it is equally clear, that there are emergencies, to meet which, the Goverment of the State pressed by them, may, *proprio vigore*, call out its militia not previously placed in the Confederate service. It is a subject of profound regret, that controversies should grow out of the cöoperation of these two cöordinate Governments in so sacred a cause.

In the argument, exemption from the call of the State Executive has been claimed for the relators on two grounds: 1st, that they had been enrolled as soldiers in the Confederate army, and then detailed for special service, in which they are now engaged, being subject, so soon as that shall have been performed, to be again placed in the ranks as other soldiers. 2d. That they are civil officers of that Government,

appointed and employed under an act of Congress, in the execution of a constitutional power, with which the service demanded by the Governor is incompatible.

My mind has not been seriously impressed by the first position, nor do I believe it influenced materially (if at all) the judgment of the Court.   The Confederate Government is invested with both civil and military powers, imposing correlative duties, and although there may be between these, certain relations and dependencies, they are, in their natures, distinct.   It is true, that revenue is necessary to the prosecution of war, but it is equally so to the maintenance of Government in peace ; and in the classification of governmental agencies into civil and military, that for the collection of taxes, would seem to appertain to the former class.   It is not questioned that an individual may be transferred from the military to the civil service ; but when the transfer shall have been effected, is not the military status terminated, or *at least,* suspended ?   A satisfactory test may be found in the case before us, the transmutation of a soldier into a collector of taxes.   Is he, thus transmuted, accountable to the department of the Treasury, or to that of War ?   Is he amenable for official malfeasance to a court martial or to a civil tribunal ? Under existing laws, military service is compulsory ; civil service however compensated, only voluntary.   Can the Government compel a citizen, against his will, to fill a civil office by first enroling him in the army, and then detailing him to the duties of that office ?   Should not military details have a palpable connection with military operations ?   In declining to place the judgment of the Court on this ground, it is only intended to intimate as the better and safer opinion, that the appointment of an enrolled soldier to a civil office, operates as a discharge from the army, or at least as a temporary exemption from military service, and consequently, whilst so invested with civil office, courts cannot recognise his military status.

Are the relators entitled to exemption from the call of the Governor, on the second ground, viz: that they are civil

officers of the Confederate Government, appointed and actually employed, under an act of Congress, in the execution of a constitutional power, with which the service demanded by the Governor is incompatible. The Confederate and State Governments are coördinate within the territorial limits of any State; they operate upon the same persons, and are intended, by their separate but harmonious action, to accomplish the grand results of security against wrongs, external and internal, and progress in civilization. The constitution of the Confederate States clearly defines the powers conferred upon the former, and as carefully and certainly secures the residuum to the latter. If that instrument be rightly understood and faithfully obeyed, conflict is impossible. If, in the unguarded exercise of power by either, conflict ensue, there can be no difficulty in determining which shall yield. If, as in the present case, these Governments, at the same time, exact of the same person incompatible services, the solution of the question, which is entitled, cannot be intrinsically difficult. In a former case (*Jeffers vs. Fair*, yet unpublished) we held, that the Confederate Government cannot, in the exercise of the power " to raise armies, " take from a State any civil officer actually employed in the functions of its government. We have as little difficulty in holding that no State Government can call into the field, for active service as a militia-man, an officer of the Confederate Government, duly appointed, and actually engaged in his official duties, under a constitutional act of the Confederate Congress.. If, in virtue of her separate sovereignty, any state may rightfully claim of her Confederates the unobstructed operation of the machinery of her established Government, so they, in virtue of the compact, may, with equal right, claim of her the like unobstructed operation of the machinery of their common Government, established by consent of all.

We pause not to inquire, whether the relators be or be not within the general terms of the act or acts of the Legislature of Georgia, under which this call has been made, nor yet, whether or not they be embraced within its exemptions; though we cheerfully bear witness to the manifest intent of

the General Assembly to avoid conflict with Confederate authorities. If the relators be without the descriptive terms employed in those acts, to fix individual liability, or if they be within the clauses of exemption, all will agree, that they are entitled to the protection of the Courts. But suppose (to make the strongest case for the Appellees) they be, by a right construction of all the provisions of the militia laws of Georgia (considered *per se*) liable to the call, what then follows? A conflict exists between the law of the Confederate States providing for the collection of revenue, and the law of Georgia regulating the militia, and subjecting them to the call of the Governor; and one or the other must yield. The 3d Section and 4th Article of the Constitution C. S., is in these words : " This Constitution, and the laws of the Confederate States, made in pursuance thereof, and all treaties made, or which shall be made under the authority of the Confederate States, *shall be the supreme law of the land* ; and the judges in every State shall be bound thereby, *anything in the Constitution or laws of any State to the* contrary notwithstanding. "

For construction of this clause of the Constitution, see *McCullock vs. The State of Maryland, 4th Wheaton.* 316. *Houston vs. Moore, 5th Wheaton,* 1. *Osborne and others vs. The U. S. Bank, 9th Wheaton,* 738. In the case under consideration, it is not denied that the Congress of the Confederate States are empowered by the Constitution to lay and collect taxes; nor, that they have passed laws for that purpose ; nor, that the relators have been duly appointed under, those laws, and are actually engaged in the duties of their respective offices ; nor, that the call of the Executive of Georgia, if enforced against them, will interfere with the performance of their duties, and suspend the operation of the revenue laws in their districts. As between these conflicting laws, (if they be in conflict,) the law of the Confederate States is Supreme, and the law of Georgia must yield. So says the Constitution, and we cannot say otherwise.

Judgments Reversed.